569 A.2d 983

**Angeline STILLMAN, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (CBR ENTERPRISES), Respondents.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 1989.

Decided Jan. 16, 1990.

Richard S. Packel, Media, for petitioner.

Charles S. Katz, Jr., Swartz, Campbell & Detweiler, Philadelphia, for respondents.

Before BARRY and SMITH, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

Angeline Stillman, on her own behalf as the widow of Thomas Stillman, Deceased Employee, (Claimant) and on behalf of their two eligible dependent children, appeals here and argues as error the decision of the Workmen's Compensation Appeal Board (Board), in affirming the referee's denial of benefits. We reverse and remand.

Presented for our consideration are two issues: (1) whether Thomas Stillman, at the time of his death on September 25, 1985, was an employee of CBR Enterprises, Inc., (CBR), for whom he was the sole worker or whether an arrangement with Carlene B. Rupertus, sole principal and officer of CBR, converted decedent from the employee, admittedly he initially was, of CBR, to the status of an independent contractor; and if we agree the latter status could be urged as a defense to a claim by decedent, as the referee concluded, the question would be whether such an arrangement could legally prevail on the basis of a referee's Conclusion of Law to that effect, as against the separate and independent claim of the widow herein; and (2) if the

employer-employee relationship continued until the death of Thomas Stillman, as against the arrangement to attempt an alteration of this relationship to that of independent contractor, whether decedent's employment and duties were such as to leave the employer-employee relationship in effect during his break for lunch. We will recite the facts that deal with these two issues hereafter.

Decedent and Rupertus, were in the business of supplying and servicing portable toilets, described in these proceedings as "potties," both employed by a company known as "Potty on the Spot." They left that company under an agreement by Rupertus to employe Thomas Stillman, which employment continued for several paydays apparently from April 1985, when CBR was incorporated, to approximately the third week in June of 1985 at or about which time it was agreed that decedent would be designated an independent contractor, apparently at decedent's request. Decedent's compensation was by check and was in the total amount of $350 per week, but with the understanding and arrangement after the proposed independent contractor relationship, that $300 would be paid to decedent and $50 would be retained by Rupertus in an account in decedent's name for the payment of taxes levied against decedent.[1]

Decedent owned no equipment or other necessary articles required for his employment, all of which were supplied by CBR. These included the truck which decedent drove on his employment rounds which was kept at his home together with all equipment and supplies, such as chemicals and detergents. Rupertus paid for the gasoline, oil and other items required to operate her truck which was serviced by

1. Rupertus testified that the $50 each week was deposited in an account in joint names of Decedent and Claimant, N.T. 11/3/86, page 8, but after decedent's death the accumulated $50 items in the total of $400, representing eight weeks was paid by Rupertus to Claimant in cash. Rupertus testified that she reported decedent's earnings on a Federal 1099 Form rather than on a Form W-2. She stated:

Q. At the end of the year, did you give *him* a W-2 Form or a 1099 Form?
A. 1099. (Emphasis added.)
We note that decedent only worked for Rupertus from April 1985 until his death on September 25, 1985.

decedent, including a tank full of water maintained on the truck, used for cleaning the potties. Since decedent was experienced in the duties of his work which actually required little or no expertise, supervision by CBR consisted of CBR's requirement that there be daily phone reports; that there be route sheets maintained and filed with CBR, that logs be kept and submitted to CBR. See N.T. 11/3/86, pages 10, 17. In addition, also requiring no expertise, decedent worked without additional pay at building the sheds which were placed as portable toilets on the sites where the potties were contained and serviced. The tools to build the potty sheds were supplied by CBR, as were all toilet paper and other forms of supplies. Admittedly, no degree of skill was needed in decedent's employment. N.T. 11/3/86, page 29. CBR had no employees other than decedent whose routine made no demand for regular hours worked, but required him to generally service once a week each of the potties, each maintained under contract with CBR. Rupertus handled the collections of money due from customers for the once a week service and supplied decedent business cards, not in his name, but cards of CBR. N.T. 86 11/3/86, page 30. Rupertus had the absolute power to terminate decedent's employment, and he could also terminate that employment at any time; there was no contract of any kind as to decedent's employment before or after the incorporation. N.T. 11/3/86, pages 36–37. CBR maintained a workmen's compensation policy with, as previously noted, the sole working employee, decedent, Thomas Stillman. In fact, in the record there is an executed workers' compensation form, NOTICE OF WORKERS COMPENSATION DENIAL, filed by CBR's workmen's compensation insurer which contains no suggestion that Thomas Stillman, named in the Denial, was anything other than an employee of CBR, the Denial being based solely on the facts stated therein that there was "No evidence of a work-related injury."

Concerning the circumstances involving decedent's death, the facts are undisputed that he arrived home from work

the day of his death, September 25, 1985, after having left for work that day at his customary time at 6:30 a.m., the regular day to conclude about 4 p.m., some days much later. When he left for work, his health was good and he then had in the truck supplied by CBR, the materials, also supplied by CBR, returning home that day at 3 p.m. whereupon he requested of his wife, Claimant, a sandwich, since he was required to leave on duty. It was his custom to stop off at home for lunch, taking a half-hour to 45 minutes to re-supply his truck with water. While eating his sandwich he was stung under the tongue by a bee or wasp causing his death, described in a coroner's report as "anaphylaxis with hypophyringeal larnyx edema due to allergic reaction to yellow jacket sting to tongue" with a further note, "circumstances of significant injury—stung on tongue by yellow jacket which landed on sandwich."

On the issue of whether or not decedent was in the course of his employment when he suffered the sting that caused his death, the circumstances at the trial turned on whether or not he was servicing CBR's truck with water when he was stung. Although the referee chose to disbelieve some of the testimony of several witnesses offered by Claimant,[2] when Rupertus came to take away her truck and the many supplies which were stored by decedent on CBR's behalf at decedent's home, the referee found that the alleged failure of Claimant to mention to Rupertus then some of the details to which Claimant testified concerning the circumstances at the time of decedent's injury and death could be used as the basis for making factual determinations without basis to the contrary. Finding of Fact No. 6.

The referee found in what is clearly a Conclusion of Law that (1) decedent was an independent contractor and not an employee of Defendant at the time of his death, and (2) the following:

2. Claimant's testimony, that decedent was filling his truck with water and would go out to finish his day's work after eating the sandwich, was admitted without objection. N.T. 4/11/86, pages 18–19, 24–26.

9. Decedent was not in the course of his employment with Defendant at the time of his death. He was either finished with his work activities for the day or taking a break for lunch.

It will be noted that the first sentence of this ninth finding is also a Conclusion of Law, while the second sentence is a finding in the alternative, but neither of which alternatives was adopted by the referee. The referee's three Conclusions of Law are as follows:

1. Decedent was an independent contractor and not an employee of Defendant on and before September 25, 1985.

2. Defendant corporation and its President, Carlene Rupertus, did not have the right to control the manner in which Decedent performed his work.

3. Decedent was not in the course of his employment with Defendant at the time he sustained his fatal injury.

On appeal, the Board affirmed, stating:

As the Board affirms the Referee's finding that the decedent was an independent contractor, there is no need to deal with the remainder of Claimant's appeal.

## I. THE INDEPENDENT CONTRACTOR ISSUE

■ Of course, as to the first issue before us, it goes without saying that the existence of an employer-employee relationship is a question of law which must be determined on the basis of the facts of the individual case. *Northern Central Bank v. Workmen's Compensation Appeal Board (Kontz)*, 88 Pa.Commonwealth Ct. 277, 489 A.2d 274 (1985).

Here, we have at the outset the relationship of employer-employee which never changed thereafter in any respect as to the terms of the employment or the control thereof by CBR, except certain terminology used to describe the unchanged relationship and the way in which the previously fixed compensation of $350 per week was parceled out to decedent. We conclude that as a matter of law the admitted and uncontradicted facts establish that the employer-

employee relationship continued until decedent's death, being unchanged as regards the rights of the widow and her children by the mere change of work titles. This Court has held that an agreement of the parties to a designation of their relationship that is contrary to the employer-employee relationship established otherwise is unavailing to effect a change. Thus, in *Workmen's Compensation Appeal Board v. Bond Transport, Inc.*, 22 Pa.Commonwealth Ct. 86, 91, 347 A.2d 788, 792 (1975), we stated:

> Further, we reject appellants' contention that other facts in this case require a reversal of the Board and referee. As examples, appellants emphasize that the lease agreement expressly designated Woods' relationship with Bond Transport as one of independent contractor; that Woods worked irregular hours; and that he selected his own travel routes. While we recognize that these factors are indicative of contractorship, the preponderance of the evidence herein dictates an employment relationship.

In *Frederico Granero Co. v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 308, 310–311, 402 A.2d 312, 314 (1979), we stated:

> The guidelines for determining whether or not Mullen was functioning as an employee at the time of the explosion are the same as those at common law for ascertaining whether or not a master-servant relationship existed. *Workmen's Compensation Appeal Board v. American Mutual Liability Insurance Co.*, 19 Pa.Cmwlth. 502, 339 A.2d 183 (1975). Each case must be determined on its own facts, but there are certain factors which have been recognized as guidelines for making a determination:
>
>> 'Control of [the] manner [in which] work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of

regular business of the employer, and also the right of the employer to terminate the employment at any time.' *J. Miller Co. v. Mixter,* 2 Pa.Cmwlth. 229, 232, 277 A.2d 867, 869 (1971).

Further, the *Granero* court, on the question of employer supervision, having noted that "whether or not Mullen was within the employer-employee relationship, ... [was] a question of law," stated:

> Most important was testimony of the claimant, accepted by the referee, [uncontradicted here] that Frederico Granero would call on the telephone at least twice a week and give instructions as to where Mullen should go to pick up supplies and what jobs were to be done. It would seem that Frederico Granero exercised actual control over the work performed by Mullen and surely had the right to control such work.

43 Pa.Commonwealth Ct. at 313, 402 A.2d at 314–15.

We conclude that we must hold that the relationship of employer-employee is undisputed on the record in this case which establishes, *inter alia,* that CBR had sufficient control to satisfy the formula in *Frederico Granero Co.;* that the terms of the agreement between the parties was no different from that when decedent and CBR admittedly were in an employer-employee relationship; the nature of the worker occupation was such that skill was minimal or virtually irrelevant; there was no "distinct occupation or business;" tools and other equipment were all supplied by CBR; payment was not by the job, nor, apparently, by the time, but was by the output required by decedent's employment; the work was indeed "part of regular business of the employer," and the right of the employer to terminate the employment at any time was admitted by the employer. These guidelines, quoted from *Granero* above, do not include all of the indicia of employer-employee relationship existing and undisputed in this case, such as the supervision and control exercised by Rupertus through the log and route sheets required to be kept by decedent and provided to Rupertus; the daily telephone calls, and if decedent did

not call by 7 p.m., he would be called by Rupertus; the fact that CBR had no employees other than decedent; that workmen's compensation insurance was maintained while the decedent was the sole worker for CBR; and, quite significant, we think, is the fact that business was being solicited by decedent for CBR, by the use of CBR's cards, which is certainly more consistent with the conclusion that decedent was working for CBR rather than for himself.[3]

We are concerned with the question of whether or not there can be a valid agreement to characterize an employer-employee relationship as that of independent contractor entered into by the employer and the employee, where such an agreement, as here, is contrary to the facts of the case which establish an employer-employee relationship as a matter of law, and whether such an agreement would be in violation of the illegality clause in Section 407 of The Pennsylvania Workmen's Compensation Act (Act),[4] wherein it is provided that:

Any agreement ... varying the amount to be paid over the period during which compensation shall be payable as provided in this Act, shall be wholly null and void.

Thus, if the relationship as a matter of law is that of employer-employee, any agreement to the contrary which deprives claimant of the benefits of the Act, must be null and void.[5] Furthermore, such an agreement should never

---

3. It has been held that a worker may not be both employer and employee. *Coccaro v. Herman Coal Co.,* 145 Pa.Superior Ct. 81, 20 A.2d 916 (1941).

4. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 731.

5. *See Temple v. Pennsylvania Dept. of Highways,* 445 Pa. 539, 285 A.2d 137 (1971); *Blair v. Susquehanna Collieries Co.,* 335 Pa. 266, 6 A.2d 779 (1939); *Wahs v. Wolf,* 157 Pa.Superior Ct. 181, 42 A.2d 166 (1945); *Blair, Jr. v. Laughead,* 108 Pa.Superior Ct. 407, 165 A. 58 (1933).
In *Susquehanna Collieries* our Supreme Court stated:
The alleged agreement sued on was unenforceable, as expressly provided by law. *Hazle Drug Co., Inc. v. Wilner,* 284 Pa. 361, 131 A. 286; *Blair v. Laughead,* 108 Pa.Super. 407, 165 A. 58. In the latter case, the plaintiff was injured while in the employ of the defendant and agreed not to file a petition for compensation on defendant's promise to give him lifetime employment.... As was said by the Supreme Court of Texas in *Woolsey v. Panhandle Refining Co.,* 116

be binding on a widow and her dependent children, since their claim is not derivative, but totally independent and separate from that of the deceased employee. *Smith v. Primrose Tapestry Co.*, 285 Pa. 145, 131 A. 703 (1926); *Workmen's Compensation Appeal Board v. Beltrami Enterprises, Inc.*, 29 Commonwealth Ct. 134, 370 A.2d 1223 (1977). *See Kujawa v. Latrobe Brewing Co.*, 454 Pa. 165, 170, 312 A.2d 411, 413 (1973).

In *Beltrami*, we stated:

The Commonwealth argues that although the decedent had been entitled to compensation for his disability, his death extinguished that claim and thus the subsequent claim of his widow for death benefits was a separate, independent claim. We agree. In construing Section 307 our Supreme Court has held that 'the right of a widow to compensation is a separate cause of action, independent of and not derivative from the right of the deceased employee.' *Kujawa v. Latrobe Brewing Co.*, 454 Pa. 165, 170, 312 A.2d 411, 413 (1973).

29 Pa.Commonwealth Ct. at 136, 370 A.2d at 1224.

■ In any event, we believe that, under the law as we read it, the decedent was not free to bargain away a right which was not his, the separate right of his dependents to prove their case under Section 307 of the Act,[6] regardless of his attempted agreement prior to his death. *Smith. See Kujawa.*

Accordingly, we must disagree with the conclusions of the compensation authorities that decedent was an independent contractor and that no employer-employee relationship existed between decedent and CBR at the time of his death.

S.W.2d 675, 678: 'Refusing to enforce the agreement of settlement involved here will be far less disastrous to the great army of employees operating under this statute than to hold that under the law an employee and an employer can contract away the rights of the employee.'
335 Pa. at 269–70, 6 A.2d at 780.

6. 77 P.S. §§ 561, 562.

## II. THE EMPLOYER–EMPLOYEE RELATIONSHIP AT THE TIME OF THE INJURY

■ Having established that the employer-employee relationship continued and existed between decedent and CBR at the time of decedent's death, it must be determined whether the decedent was in the course of this employment at the time of his injury on September 25, 1985, also the day on which he met his death.

As we have noted above, the Board in its opinion did not reach this issue, affirming the referee's disallowance solely on his independent contractor determination.

The key finding of fact pertinent to the issue of whether claimant's decedent was in the course of his employment quoted above states: "9. Decedent was not in the course of his employment with Defendant at the time of his death. He was either finished [with] his work activities for the day or taking a break for lunch." As we have noted, the first sentence of finding of fact No. 9 is a conclusion of law. The second sentence of finding of fact No. 9, however, does contain alternative factual findings, neither of which was adopted by the referee. We believe that the omitted finding of fact is essential to our application of the law governing this case. It may be that a finding that claimant's decedent was finished with his work activities for the day would require that claimant be denied benefits, *see* Section 301(c)(1) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411(1) (requiring the injury to occur "while the employe is engaged in the furtherance of the business or affairs of the employer"), while a finding that claimant's decedent was on a lunch break may permit an award of benefits. *See e.g. Workmen's Compensation Appeal Board (Shremshock) v. Borough of Plum,* 20 Pa.Commonwealth Ct. 35, 40, 340 A.2d 637, 640 (1975) (Where an employee's workplace is not stationary, minor deviations from the employer's business, i.e. lunch, do not break the chain of conduct necessary to be within the course of employment).

It is well-settled that the determination of whether an employee is in the course of his employment at the time of an injury is a question of law to be decided based upon findings of fact. *Crouse v. Workmen's Compensation Appeal Board (Sperry Univac)*, 57 Pa.Commonwealth Ct. 430, 426 A.2d 749 (1981). In the present case, the employer contends that claimant's decedent was finished with his work for the day and claimant maintains that the decedent was eating lunch while filling the employer's truck with water. The determination of whether claimant's decedent was finished with his work assignments for the day is dependent, in large part, upon what evidence is deemed credible and whether such evidence as accepted by the referee is adequate to support the referee's legal conclusion as to the employment status of the decedent at the time of his injury. In this connection, it must be considered whether the decedent as a truck driver was a "roving employe," who admittedly had no fixed place of employment, which is generally true of this category of employees, but worked out of his home; most significantly, transportation was supplied to him by the employer. *Jones v. Workmen's Compensation Appeal Board (Rehab. Coordinators, Inc.)*, 88 Pa.Commonwealth Ct. 426, 489 A.2d 1006 (1985); *Port Authority of Allegheny County v. Workmen's Compensation Appeal Board (Stevens)*, 70 Pa.Commonwealth Ct. 163, 452 A.2d 902 (1982); *Schreckengost v. Workmen's Compensation Appeal Board*, 43 Pa.Commonwealth Ct. 587, 403 A.2d 165 (1979); *Workmen's Compensation Appeal Board v. Borough of Plum*, 20 Pa.Commonwealth Ct. 35, 340 A.2d 637 (1975).

Furthermore, considering whether or not an injured worker is in the course of his employment when injured or has departed therefrom, where the employee is of the "roving" or traveling type, as was the decedent in this case, there is a presumption that an established employment situation continues in effect unless the presumption is rebutted.[7]

7. This Court has repeatedly held that 'the course of employment of a traveling worker is necessarily broader than that of an ordinary

## CONCLUSION

For the foregoing reasons, we conclude that the activities and arrangements purportedly aimed at creating an independent contractor relationship, as a matter of law did not accomplish this result as regards the Claimant in her status as a widow and representing her and decedent's children; but that we must remand for factual clarification by a finding or findings as indicated in the foregoing opinion on whether decedent was in the course of his employment with CBR when he suffered the sting that caused his death.

## ORDER

NOW, January 16, 1990, the order of the Workmen's Compensation Appeal Board, dated November 14, 1988, as of No. A–93740, is hereby reversed, and the case is remanded for further factual consideration and determination as indicated in the foregoing opinion.

Jurisdiction relinquished.

employee....' Moreover, 'when an employee sets out upon the business of his employer and is later fatally injured, there is a presumption that the employee was engaged in the furtherance of his employer's business at the time of his death....' To be denied compensation, an employee must have 'virtually *abandoned* the course of his employment, or ... at the time of the accident [injury], [be] *engaged in something wholly foreign thereto....*' (Citations omitted.) (Emphasis added.)
*Capitol International Airways, Inc. v. Workmen's Compensation Appeal Board,* 58 Pa.Commonwealth Ct. 551, 553–554, 428 A.2d 295, 297 (1981).