746 A.2d 87

## CITY OF McKEESPORT

v.

## WORKERS' COMPENSATION APPEAL BOARD (MILETTI).

### Appeal of Beatrice Miletti.

Supreme Court of Pennsylvania.

Argued March 9, 1999.

Decided Jan. 19, 2000.

Reargument Denied March 13, 2000.

Sara J. Klein, Pittsburgh, for Beatrice Miletti.

Richard L. Rosenzweig, for City of McKeesport Fire Dept.

David Hawkins, Amber M. Kenger, Mechanicsburg, for WCAB.

Michael Fisher, Atty. Gen.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

CAPPY, Justice.[1]

We granted allocatur to determine whether the Commonwealth Court erred in reversing a workers' compensation judge's decision, granting Appellant Beatrice Miletti's fatal claim petition, on the basis that Mrs. Miletti failed to satisfy the requirements of section 301(c)(2) of the Workers' Compen-

1. The opinion was reassigned to this author.

sation Act (Act). 77 P.S. 411(2). For the reasons that follow, we hold that Mrs. Miletti was entitled to fatal claim benefits; thus, we reverse the decision of the Commonwealth Court.

Mrs. Miletti is the widow of Cresente Miletti (Decedent). Decedent was a firefighter for Appellee City of McKeesport. Decedent had worked for the City for thirty years before retiring on August 31, 1983. On February 25, 1993, Decedent passed away. Thereafter, Mrs. Miletti filed a fatal claim petition, pursuant to the Act, on September 27, 1993. In her petition, Mrs. Miletti alleged that Decedent suffered and died from interstitial lung disease (ILD) as a result of his employment as a firefighter.[2] The City of McKeesport denied the allegations and the parties proceeded to a hearing before a workers' compensation judge.

At the hearing, Decedent's physician, Dr. Rahat M. Chaudhry, who is board certified in internal medicine, presented deposition testimony, credited by the workers' compensation judge, that he began treating Decedent on July 24, 1986 for ILD. In Dr. Chaudhry's opinion, the ILD was caused by on-the-job inhalation of heat, soot, chemicals, and asbestos and which, in turn, caused Decedent's death. The workers' compensation judge further found that on January 13, 1993, Mrs. Miletti's counsel first notified the City of McKeesport that only as of December 7, 1992, did Dr. Chaudhry identify the cause of Decedent's chronic respiratory problems as being work-related.[3]

The workers' compensation judge granted the fatal claim petition for death from work-related lung disease. Before the

---

**2.** The workers' compensation judge's Finding of Fact No. 6(a), based upon Decedent's physician's testimony, described ILD as follows:

> [A] progressive and terminal disorder wherein the normal lung tissues are displaced by fibrous tissue and as a consequence lose the ability to expand properly. There are many known causes of ILD, including exposure to noxious materials such as soot, asbestos, metals, chemicals, coal, pesticides, and molds, as well as a pre-existing history of systematic diseases such as lupus and arthritis.

**3.** Specifically, the workers' compensation judge accepted as credible the testimony of Dr. Chaudhry, that he began treating Decedent in 1986 for ILD. Dr. Chaudhry initially believed decedent's condition to be idiopathic in nature, and thus, did not discern a causal relationship

workers' compensation judge, the City of McKeesport argued that Mrs. Miletti had failed to establish that Decedent's disability arose within 300 weeks of Decedent's last date of occupational exposure as required by section 301(c)(2) of the Act. 77 P.S. § 411(2). However, the workers' compensation judge rejected this argument and held that Mrs. Miletti had produced unequivocal and credible medical testimony that Decedent was disabled as a result of ILD prior to July 24, 1986 (the date he first received treatment by his physician). Because this date fell within 300 weeks following Decedent's retirement in August 1983, Decedent established a compensable disability and satisfied the requirements of section 301(c)(2). The Workers' Compensation Appeal Board (Board) affirmed. The Commonwealth Court, *en banc*, reversed the order of the Board. The court determined that Mrs. Miletti failed to meet the limitations for instituting a fatal claim petition under section 301(c)(2) because Decedent did not file a claim for benefits during his lifetime and his date of death was more than 300 weeks from his last date of employment.

As noted above, we granted allocatur to address whether the Commonwealth Court erred in reversing the workers' compensation judge's decision, granting Mrs. Miletti's fatal claim petition, on the basis that Mrs. Miletti failed to satisfy the mandates of section 301(c)(2) of the Act.[4]

The relevant section of the Act provides that:

between Decedent's work and his disease. However, he subsequently changed his opinion. The workers' compensation judge credited Dr. Chaudhry's opinion that Decedent's lung disease and subsequent death were caused by occupational inhalation of heat, soot, chemicals and asbestos, and credited Dr. Chaudhry's testimony that he told Decedent that his disease was work-related on December 7, 1992. The judge also accepted as credible the testimony of Decedent's fellow firefighter of twenty years, Albert Cipicchio, that Decedent was exposed to burning rubber, plastic wiring and asbestos, and that the City of McKeesport provided masks which restricted breathing, and therefore, were not usable. The judge found that Decedent passed away on February 25, 1993 and concluded that his death was caused by a compensable disability.

4. Appellate review of a Commonwealth agency determination is limited. The court shall affirm the adjudication of a Commonwealth agency

The terms "injury," "personal injury," and "injury arising in the course of his employment," as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable *disability has occurred within such period*, his subsequent death as a result of the disease shall likewise be compensable.

77 P.S. § 411(2)(emphasis supplied).

The Commonwealth Court interpreted this provision of the Act and determined that Mrs. Miletti was not entitled to fatal claim benefits. In reaching its conclusion, the Commonwealth Court relied upon its decision in *Fortely v. WCAB (J & L Steel Corporation (Buckeye))*, 117 Pa.Cmwlth. 356, 543 A.2d 1248 (1988). In *Fortely*, the Commonwealth Court reviewed section 301(c)(2) and found that this section barred an occupational disease death benefit claim where the decedent had not filed a disability claim during his or her lifetime, and the date of death was more than 300 weeks from the last date of employment. Thus, the *Fortely* court's focus in interpreting section 301(c)(2) was on whether a lifetime claim petition was filed and when death occurred.

In the case *sub judice*, the Commonwealth Court found that Decedent did not seek benefits for his occupational disease during his lifetime. Thus, based upon *Fortely*, the Commonwealth Court determined that Mrs. Miletti was required to establish that Decedent's death occurred within 300 weeks

unless it finds that the adjudication is in violation of constitutional rights, is not in accordance with law, is violative of the practices and procedure of the Commonwealth agency, or any findings of fact made by the agency and necessary to support its adjudication are not supported by substantial evidence. 2 Pa.C.S. § 704; *Wilson v. W.C.A.B. (Alcoa)*, 542 Pa. 614, 669 A.2d 338, 340 (1996).

after his last date of employment.[5]   As Decedent died over ten years after his retirement as a firefighter, a period in excess of 300 weeks, the Commonwealth Court concluded that Ms. Miletti was not entitled to an award of fatal claim benefits.

We find that the Commonwealth Court's analysis is inconsistent with the plain language of section 301(c)(2). Based upon the explicit language of the statute, it becomes clear that the proper focal point is whether the decedent's *disability* occurred within three hundred weeks of exposure. The Commonwealth Court erroneously concentrated on when *death* occurred and whether a lifetime disability claim was filed.   By doing so, the court failed to give meaning to the express words of the legislature.

The rules of statutory construction require that when the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit.  1 Pa.C.S.A. § 1921(b).  The meaning of the words of the statute is unmistakable.   Section 301(c)(2) specifically permits fatal claim benefits so long as the *disability occurred within* 300 weeks of exposure.

Indeed, as Judge Alexander F. Barbieri (now deceased) explains in his venerable treatise on workers' compensation:

> if 'the employee's compensable disability has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable.'  The effect of this is that, if the disability occurs within the 300 weeks' period, the employee's death thereafter, no matter how long after, even if beyond the period of 300 weeks, is compensable because the disease was compensable during the employee's lifetime.

Pennsylvania Workmen's Compensation and Occupational Disease, § 7.32(2)(Bisel 1999).   Contrary to the Commonwealth Court's analysis, the statute's mandate is clear: if a disability occurs within 300 weeks of exposure, an employee's subse-

---

5.  Three hundred weeks is the equivalent of five years, nine months and one week.

quent death is compensable.[6] *See Penn Steel Foundry and Machine Co. v. WCAB (Wagner),* 122 Pa.Cmwlth. 171, 551 A.2d 653 (1988).

A second rule of statutory construction leads us to the same conclusion. The rules of statutory construction require that every statute shall be construed, if possible, to give effect to all of its provisions. 1 Pa.C.S.A. § 1921(a). As noted above, the critical language for purposes of this appeal is that if the employee's "compensable disability had occurred within such period, his subsequent death as a result of the disease shall likewise be compensable." 77 P.S. 411(2). This statement by the General Assembly is rendered meaningless and is superfluous unless one interprets it to apply only to deaths occurring beyond the 300 week period. The situation where death occurs within the 300 week period is already addressed by the preceding sentence:

whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease.

77 P.S. § 411(2).

■ As demonstrated by reading these sentences, the time of death and the filing of a lifetime claim petition are irrelevant to a determination of the timeliness of a fatal claim petition.[7] Again, it is whether disability occurred within 300 weeks of exposure.

**6.** To the extent that the Commonwealth Court's decision in *Fortely* is inconsistent with our decision today, it is hereby rejected.

**7.** A separate question arises whether section 301(c)(2) would permit death benefits to be awarded in a situation where a claim based upon disability occurring within 300 weeks would not meet the procedural or substantive requirements of the Act as of the time the death claim is filed. In such circumstances, it is arguable that the disability is not "compensable" for purposes of section 301(c)(2). For example, the issue would present itself in a case in which, prior to the employee's death, the three-year limitation period for the filing of a claim petition imposed by section 315 of the Act, 77 P.S. § 602, expired without a

■ In the case *sub judice,* the evidence, as found by the finder of fact, establishes that Decedent was disabled as a result of work-related interstitial fibrosis prior to July 1986. As this date falls within the 300 week period following Decedent's last date of employment, i.e., the date of his last occupational exposure, his widow, Mrs. Miletti, is entitled to benefits pursuant to 77 P.S. § 411(2).

Justice NIGRO files a dissenting opinion in which Justice ZAPPALA and Justice NEWMAN join.

NIGRO, Justice, dissenting.

I respectfully dissent. While I, too, sympathize with the unfortunate unfolding of events that preclude Mrs. Miletti from collecting death benefits on behalf of her husband, no amount of sympathy can overcome the constraints of the operative statute of repose.

Dispositive of this matter is the application of § 301(c)(2) of the Workers' Compensation Act (Act), which states in pertinent part:

(2) The terms "injury," "personal injury" and "injury arising in the course of employment," shall include occupational disease as defined in section 108 of this act [1].... Provided,

lifetime claim having been filed, and where it is established that the employee was informed of the work-related nature of his disease. In the case at bar, although Decedent did not file a lifetime claim within three years after he suffered total disability, this court has held that the three-year period does not commence until such time as the employee is apprised by competent medical diagnosis that his disability is due to occupational disease. *See Price v. Workmen's Compensation Appeal Bd. (Metallurgical Resources),* 533 Pa. 500, 626 A.2d 114, 117 (1993). Here, Decedent did not receive such diagnosis until December 1992, and the fatal claim petition was filed within one year's time thereafter. Thus, section 315 is no impediment to the death claim, and the City of McKeesport has not suggested that the Act otherwise bars the underlying claim for disability.

1. Section 108, under which Decedent's disease qualifies, includes, *inter alia,* "[d]iseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in fire fighting ... caused by exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen." 77 P.S. § 27.1(*o*).

That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and *occurring within three hundred weeks after the last date of employment* in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if employe's compensable disability had occurred within such period, his subsequent death as a result of the disease shall likewise be compensable....

77 P.S. § 411(2)(emphasis added).

Section 301(c)(2) is a statute of repose because it requires that the compensable disease or death "occur[ ] within three hundred weeks after the last date of employment." A statute of repose "bars a suit a fixed number of years after the defendant acts in some way ... even if this period ends before the plaintiff has suffered an injury." BLACKS LAW DICTIONARY 1423 (7th ed.1999). Thus,

A statute of repose ... *limits the time within which an action may be brought* and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. Unlike an ordinary statute of limitations which begins running upon accrual of the claim, the period contained in a statute of repose *begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted.*

*Id.* (citing 54 C.J.S. *Limitations of Actions* § 4 at 20–21 (1987)(emphasis added)).

Here, the controlling statute designates the last date of employment in a hazardous occupation as the specific event (i.e. employer/defendant exposes employe/plaintiff to workplace hazards) that initiates the period of repose. The period ends three hundred weeks later *"regardless of whether a cause of action has accrued or whether any injury has resulted"* thereby *"limit[ing] the time within which an action may be brought."* Thus, where no lifetime benefits were filed, this statute of repose allows a claimant a 300–week window during which his death must occur from an occupational

disease. The enactment of this statute reflects the legislature's concern that an employer be provided timely notice and protection from stale claims, thereby preventing speculation over whether a disease is work-related years after an exposure occurred. *Sporio v. Workmen's Compensation Appeal Board (Songer Construction)*, 553 Pa. 44, 50, 717 A.2d 525, 528 (1998). Thus, a claim under § 301(c)(2) expires within 300 weeks of a claimant's last exposure whether or not an occupational disease manifests or death occurs.

By applying the discovery rule, the majority opinion unravels the entire legislative scheme of restricting a compensable cause of action under this statute.[2] Therefore, contrary to the majority opinion, I find the discovery rule has no application in regard to the running of this statute. Rather, I would find that since no lifetime benefits were claimed, in order to be compensable, decedent's death would have to occur within 300 weeks of his last exposure.[3]

Here, because Mrs. Miletti's husband died more than 300 weeks after his last exposure without timely filing for lifetime benefits, her claim is not compensable, and § 301(c)(2) prevents her from recovering his death benefits.

Justice ZAPPALA and Justice NEWMAN join in the dissenting opinion.

**2.** I fail to see how such construction of § 301(c)(2) does not comport with our obligation to effectuate the Act's humanitarian objectives. *Sporio*, 553 Pa. at 49, 717 A.2d at 528. It is *because* occupational diseases are recognized as "latent and insidious in nature, often requiring years of incubation before they are discovered," *Republic Steel v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 38, 640 A.2d 1266, 1269 (1994) that, unlike for other types of workplace injuries, the Act affords the additional 300 week period within which a cause of action must accrue.

**3.** Once the cause of action has accrued within the 300 weeks—that is, once a claimant knows he is afflicted with an occupational disease or once a claimant has died from such a disease—pursuant to 77 P.S. § 602, there is a three-year statute of limitations for filing for benefits.