Marie **INGRAM**, deceased employee, and Marc A. Hicks, Sr., parent and natural guardian of minor dependent, claimant, Marc A. Hicks, Jr., Petitioners

v.

WORKERS' COMPENSATION APPEAL BOARD (FORD ELECTRONICS & REFRIGERATION CORPORATION, and Ford Electronics/Self–Insured), Respondents.

Commonwealth Court of Pennsylvania.

Argued Oct. 30, 2007.
Decided Dec. 12, 2007.
Reargument Denied Feb. 6, 2008.

---

James B. Mogul, Bala Cynwyd, for petitioners.

Jane A. Lombard, Philadelphia, for respondent, Ford Electronics and Refrigeration.

BEFORE: FRIEDMAN, SIMPSON, Judges, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In these novel consolidated workers' compensation appeals, we determine whether a dependent claimant in a fatal claim proceeding[1] is barred from litigating the compensability of a decedent's lifetime disability where the decedent's lifetime occupational disease claim was withdrawn pursuant to a compromise and release agreement (C & R).

Claimant petitions for review of a decision of the Workers' Compensation Appeal Board (Board) that affirmed a dismissal of Claimant's fatal claim petition. Claimant

---

1. Identical fatal claim petitions were filed on behalf of Marie Ingram, deceased employee (Decedent); Mark A. Hicks, Jr., minor dependent (Claimant); and Mark A. Hicks, Sr., Claimant's parent and natural guardian. The Bureau of Workers' Compensation (Bureau) assigned each petition a different claim number, which resulted in three identical decisions and appeals. This Court consolidated the three appeals, which in fact involve only one claimant; therefore, we address them as one.

sought benefits for the death of Marie Ingram (Decedent), who adopted Claimant as a grandson shortly before her death. The Board determined the fatal claim petition was barred by the 1998 approval of Decedent's C & R with Ford Electronics & Refrigeration Corporation (Employer), which discharged Employer from any claim or liability for an occupational disease or injury resulting from hazardous workplace exposure. For the following reasons, we affirm.

## I. Factual and Procedural History

In 1989 and 1995, Decedent sustained separate wrist/carpal tunnel injuries. In 1990, Employer issued a notice of compensation payable (NCP) for an injury described as bilateral wrist pain. In 1995, Employer issued a separate NCP for an injury described as bilateral carpal tunnel syndrome and left shoulder pain.

Decedent's last day of work was May 16, 1995. Four months later, Decedent filed a claim petition alleging she contracted an asbestos-related occupational disease described as: "[c]hronic constrictive bronchiolitis, lesions on the lungs, and inability to breathe effectively...." Claim Pet. at 1; Reproduced Record (R.R.) at 86a. Decedent claimed she contracted the disease as a result of exposure to hazardous fumes.

In March 1998, Workers' Compensation Judge Scott M. Olin (First WCJ) circulated a decision approving a C & R between Decedent and Employer that resolved liability for the accepted carpal tunnel injuries. The C & R stated Decedent had no widower, children or dependents. It also resolved Decedent's pending occupational disease claim. Pursuant to the C & R, Employer paid Decedent $84,000. In exchange, among other things, Decedent's occupational disease claim petition was withdrawn and Decedent waived any past,

present, and future rights to link any alleged wage loss to the accepted carpal tunnel injuries or the alleged occupational disease. Decedent also waived all future rights to seek payment for medical bills incurred to treat either the accepted injuries or the alleged occupational disease. First WCJ found the parties were aware of all issues in the case and agreed that ending the litigation was in their best interests. Neither party appealed First WCJ's decision.

More than 300 weeks after her last day of work, Decedent died from lung cancer on October 31, 2001. Shortly before her death, Decedent adopted Claimant as a grandson. Claimant timely filed a fatal claim petition on October 28, 2004, which the Bureau assigned to Workers' Compensation Judge Susan E. Kelley (Second WCJ). In response, Employer filed a motion to dismiss alleging the claim was barred by Section 301(c)(2) of the Workers' Compensation Act (Act)[2] because Decedent did not establish a compensable disability during the 300–week period following her last hazardous exposure.

After reviewing the C & R, Second WCJ found that in exchange for a lump sum settlement, Decedent gave up her right to pursue a lifetime claim based on any occupational disease. Second WCJ further noted that Decedent's alleged occupational disease was never adjudicated compensable and that Employer never accepted liability for it.

Second WCJ further found Claimant filed the fatal claim petition within three years of Decedent's death, but her death occurred 337 weeks after her last date of hazardous exposure. Pursuant to Section 301(c)(2) of the Act, in order for death from occupational disease to be compensa-

---

**2.** Act of June 2, 1915, P.L. 736, *as amended,*    77 P.S. § 411(2).

ble, a *compensable* disability must occur within 300 weeks of exposure. *City of McKeesport v. Workers' Comp. Appeal Bd. (Miletti)*, 560 Pa. 413, 746 A.2d 87 (2000). In her decision, Second WCJ addressed Claimant's primary argument as follows:

> Claimant's counsel essentially argues that the Fatal Claim Petition is not barred because [Decedent] filed a timely lifetime claim for pulmonary/respiratory occupational disease and neither the Act nor caselaw requires a finding of compensability or compensable disability to satisfy the statute of repose or the statute of limitations. The Judge finds this argument misplaced. The explicit language of Section 301(c)(2) requires that the disability be compensable in nature, not potential or undecided. Claimant is beyond the statute of limitations for filing a lifetime claim to adjudicate the issue of disability *and [Decedent] gave up the right to pursue the issue of a compensable occupational disease exposure disability in exchange for a lump sum amount of money.*

Second WCJ's Op., Finding of Fact (F.F.) No. 14 (emphasis added). Because no one established a compensable disability within 300 weeks of Decedent's last hazardous occupational exposure, and her death occurred more than 300 weeks after her last exposure, Second WCJ granted Employer's motion to dismiss Claimant's fatal claim petition.

On appeal, the Board relied on *Miletti* also and Claimant's arguments. In particular, the Board stated:

> [W]e note that the Supreme Court, in *Miletti*, contemplated whether Section 301(c)(2) would permit the award of death benefits with respect to a death occurring more than 300 weeks after the last hazardous occupational exposure where a lifetime claim based upon disability occurring within the relevant 300-week period would not meet the procedural or substantive requirements of the Act as of the time the death claim is filed. *Miletti*, 746 A.2d at 90 n. 7. The Court specifically questioned whether such disability would be "compensable" within the meaning of Section 301(c)(2). *Id.*
>
> After reviewing the relevant law and the Supreme Court's concerns in *Miletti*, we believe Decedent's release of [Employer] from liability for an occupational disease precludes any subsequent determination that her disability from that occupational disease was compensable. Because the explicit language of [Section 301(c)(2)] provides for the compensability of an employee's death occurring more than 300 weeks after the last hazardous occupational exposure only where the disability associated with that disease is compensable[,] Claimant was precluded from establishing the compensability of Decedent's lifetime disability from occupational disease because Decedent released [Employer] from liability for that disability. Given this, Claimant cannot pursue his Fatal Claim Petition.

Board's Op. at 5–7 (footnotes omitted).

■ Claimant petitions for review.[3]

## II. Effect of C & R

### A. Arguments

Claimant first argues the Board erred in holding he is barred from pursuing a fatal claim. He contends the C & R did not

---

3. This Court's review is limited to determining whether the findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated. *Minicozzi v. Workers' Comp. Appeal Bd. (Indus. Metal Plating, Inc.)*, 873 A.2d 25 (Pa.Cmwlth.2005).

consider or resolve his fatal claim, only Decedent's lifetime disability claims. His averment that death was causally related to the occupational disease should be enough for his distinct claim to proceed.

Claimant stresses Decedent's lifetime occupational disease claim, filed four months after last hazardous occupational exposure, and his fatal claim, filed within three years of Decedent's death, were timely filed. He thus contends Decedent's filing of the lifetime claim triggers the requisite notice to preserve his fatal claim. *See Sporio v. Workmen's Comp. Appeal Bd. (Songer Constr.)*, 553 Pa. 44, 717 A.2d 525 (1998) (purpose of Section 301(c)(2) is to prevent stale claims and speculation as to whether a disease is work-related years after exposure occurred).

Second, Claimant maintains the C & R, which released Employer from liability on Decedent's lifetime claim, did not bar Claimant's fatal claim, which is independent from and not derivative of Decedent's lifetime occupational disease claim. As primary support for his assertion that Decedent could not compromise legal rights that were not hers, Claimant cites *Stillman v. Workmen's Compensation Appeal Board (CBR Enterprises)*, 131 Pa.Cmwlth. 106, 569 A.2d 983 (1990) (decedent's lifetime designation as independent contractor could not preclude dependents' death claim seeking benefits on theory of employee status) and *Workmen's Compensation Appeal Board (Kokinda) v. Beltrami Enterprises, Inc.*, 29 Pa.Cmwlth.134, 370 A.2d 1223 (1977) (widow's claim for death benefits was a separate and independent claim from decedent's lifetime claim for anthracosilicosis).

Relying on *Stillman* and *Beltrami*, Claimant asserts Decedent was not free to bargain away his right to dependents' fatal

claim benefits. Claimant contends the Board erred by not addressing this specific issue. Therefore, the Board's holding, that the C & R bars Claimant from attempting to prove Decedent's disability from occupational disease was compensable, must be reversed.

Employer responds that Decedent's withdrawal of her occupational disease claim rendered her death more than 300 weeks after last hazardous occupational exposure non-compensable. Additionally, citing *Miletti*, Employer asserts the 300–week limitation period in Section 301(c)(2) of the Act, 77 P.S. § 411(2), is a statute of repose, not a statute of limitation.

Employer's fundamental argument is Claimant cannot establish Decedent contracted an occupational disease within 300 weeks of her last occupational exposure because Decedent agreed to forever release Employer from liability for an occupational disease. Therefore, Claimant cannot prove an underlying compensable disability during Decedent's lifetime.

Employer further emphasizes that neither party appealed First WCJ's decision and, therefore, it is final. In Finding of Fact No. 4, First WCJ found

a. that ... [Decedent's] Claim Petition will be withdrawn;

b. that *[Decedent] waives any* past, present, and future *rights to link any alleged wage loss to ... a potential pulmonary/respiratory work-alleged occupational disease* with last date of exposure on May 16, 1995.

R.R. at 92a (emphasis added). Employer also asserts First WCJ's decision rejects Claimant's contention, that the C & R description of the injury acknowledges a compensable occupational disease.[4]

---

**4.** Paragraph 4 of the C & R describes the injury and includes the following language

apparently referencing an occupational dis-

Further, Paragraph 16 of the C & R states:

> The parties are entering into this agreement for purposes of finally resolving all disputes, claims, and issues between [Employer and Decedent]. The parties further agree, with the express understanding of [Decedent], that in exchange for payment of the aforestated sum, [Decedent] is dropping and forever discharging [Employer] of any claims and/or liability for an occupational disease or injury resulting from work place exposure.

R.R. at 97a (emphasis added). Citing this paragraph, Employer argues as follows: because Decedent relinquished her right to prove a disability caused by occupational disease occurring within 300 weeks of her last exposure, it is too late for Claimant to establish a compensable lifetime disability; thus, no fatal claim can be maintained.

## B. Discussion

### 1.

■ Initially, we note that "to recover death benefits under [Section 301(c)(2) of the Act], an employee's death from an occupational disease must occur within three hundred weeks after the employee's last exposure to the hazard if the employee did not file a lifetime claim." *Sporio*, 553 Pa. at 50–51, 717 A.2d at 528. "However, if the employee filed a lifetime claim, death benefits may be awarded even if the death occurs beyond the three hundred week period *because the fatal claim is viewed as a continuation of the original claim.*" *Id.* at 51, 717 A.2d at 528–29 (emphasis added).

■ Here, however, prior to adopting Claimant, Decedent extinguished the original occupational disease claim by C & R. "Once approved, a valid [C & R] is final

and binding on the parties." *Farner v. Workers' Comp. Appeal Bd. (Rockwell Int'l)*, 869 A.2d 1075, 1078 (Pa.Cmwlth.), *appeal denied*, 586 Pa. 730, 890 A.2d 1061 (2005). The legislature intended C & R's be on an equal footing with civil settlements, which encourage settlement and stress finality. *Dep't of Labor & Indus., Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (U.S. Food Serv.)*, 932 A.2d 309 (Pa.Cmwlth.2007). Further, where, as here, the C & R resolves all outstanding petitions and contains very broad release language, it must be considered final as to all outstanding issues. *Id.* "The hallmark of a [C & R] is finality." *Id.* at 315.

### 2.

■ There are two principle reasons why we affirm the dismissal of the fatal claim here: the C & R and the passage of the 300–week onset period for occupational disease without establishment of a compensable disability. Together, these circumstances result in the Claimant's inability to proceed. The C & R clearly indicates it resolved all pending issues between the parties and releases Employer from claims for occupational disease. Moreover, at the time of Claimant's death *after* the expiration of the 300–week period, Decedent's occupational disease claim was not adjudicated compensable and was not pending.

In *Miletti*, our Supreme Court clarified that the proper focal point for this type of case is whether a decedent's occupational disease disability occurred within 300 weeks of exposure, not when death occurred and not when a lifetime disability claim was filed. *See* 560 Pa. at 418, 746 A.2d at 89. This is a prerequisite to recovery on a fatal claim petition. Here, the

ease: "chronic bronchiolitis, lung lesions, dyspnea." R.R. at 94a

entire 300–week onset period occurred while Decedent was still alive. The entire period passed without establishment of a compensable claim for occupational disease disability.

Also in *Miletti*, our Supreme Court in footnote *dicta* considered what would happen if there was a legal impediment to a claim of disability occurring within the 300–week period. *Id.* at 419, 746 A.2d at 90 n. 7. The Court observed that in such circumstances, "it is arguable that the disability is not 'compensable' for purposes of section 301(c)(2) [pertaining to fatal claim petitions]." *Id.*

Here, there is a substantive impediment to a claim of disability occurring within the 300–week onset period: Decedent's release of the claim and First WCJ's final decision approving the release. Consistent with the Supreme Court's footnote *dicta* in *Miletti*, this substantive impediment leads to the conclusion that any occupational disease disability during Decedent's life is not compensable for purposes of a subsequent fatal claim petition.

Claimant argues Decedent could not release his ability to prove she suffered disability during her lifetime, but he cites no authority to pursue a right extinguished before his claim came into existence. This lack of authority must be contrasted to our Supreme Court's recognition that a fatal claim is viewed as a continuation of the original lifetime claim. *Sporio.* Because Decedent withdrew her occupational disease claim and forever discharged Employer from liability for it, Claimant's fatal claim, based on the continuation of a compensable lifetime occupational disease disability, does not exist.

### 3.

Worthy of further discussion is the timing of Claimant's dependency. The C & R indicates that Decedent had no widower, children or dependents. C & R. at ¶¶ 5b–3; R.R. at 94a–95a. Specifically, Paragraph 5e of the C & R provides:

State the name, address and relationship to the employee of any other person claiming to be a dependent together with a brief summary of the factual basis for this claim:

Not applicable.

R.R. at 95a. At hearing before Second WCJ, however, Claimant's counsel stated that before Decedent died she adopted Claimant as a minor grandson, and he was directly dependent on her for support. Notes of Testimony, 12/21/04, at 8; R.R. at 78a.

As reflected by the C & R, Claimant was not a dependent at the time Decedent released her occupational disease claim. Under these circumstances, Claimant can assert no inchoate right that would interfere with Decedent's release of rights based on an occupational disease. Moreover, Employer entered into the C & R with the understanding there were no dependents. It is unclear how Claimant's after-acquired status could legally impact Employer's expectation at the time of contract.

In view of the all the foregoing, we discern no error in the Board's determination that Decedent's C & R barred Claimant's fatal claim petition.

### III. Ambiguity in Section 301(c)(2)

#### A. Arguments

In a related argument, Claimant contends the matter should not have been decided on a motion to dismiss and that the case should be remanded for hearing. He asserts there is an open legal question as to whether disability must be proven to be compensable during a decedent's lifetime or whether the disability can be proved compensable during litigation by

the fatal claim claimant. He further asserts such a question of law should be resolved in favor of the fatal claim claimant, consistent with the remedial purposes of the Act. Claimant thus contends he should be allowed to litigate the compensability of Decedent's alleged occupational disease.

Claimant further contends Second WCJ erred by finding that nothing in the C & R description of injury acknowledged Decedent's alleged occupational disease as work-related. Claimant again asserts the C & R merely resolved the lifetime claim; it did not indicate whether it was compensable or not. Therefore, Claimant contends, compensability of Decedent's occupational disease remains an open issue which he should be able to litigate now.[5]

Employer responds as follows: Claimant's admission that Decedent resolved her lifetime claim through the C & R is an implicit admission that a compensable disability secondary to occupational disease cannot be established; therefore, Claimant has no cause of action for fatal claim benefits.

## B. Discussion

Section 301(c)(2) addresses the 300–week onset required for occupational disease claims, and it relevantly provides (with emphasis added):

> whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's *compensable disability* has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable....

As explained above, there is a substantive impediment to Claimant's fatal claim which brings it squarely within the ambit of the *Miletti* footnote *dicta*. In the C & R, Claimant withdrew her occupational disease claim and forever discharged Employer "of any claims and/or liability for an occupational disease or injury resulting from work place exposure." R.R. at 97a. As a result, at the time of Decedent's death, well beyond the 300–week onset period in Section 301(c)(2) of the Act, her occupational disease claim had been resolved and was no longer pending. This reasoning is fact-intensive and does not require that we resolve an ambiguity in the Act.

---

5. In support of his position, Claimant attempts to distinguish this case from the hypothetical facts discussed in the Supreme Court's footnote *dicta* in *Miletti*. *See Id.* at 419, 746 A.2d at 90 n. 7. In the example, the employee, aware of the work-related nature of his disease, failed to file a lifetime claim within the three-year limitation period in Section 315 of the Act, 77 P.S. § 602. Thereafter the employee dies. As discussed above, the Supreme Court stated that a fatal claim in such case would arguably be non-compensable for fatal claim purposes.

Here, Decedent filed her lifetime claim four months after her last hazardous exposure, well within Section 315's three-year statute of limitations. For this reason, Claimant argues the present case is distinguishable from the example in *Miletti* and arguably compensable even though Decedent's occupational disease claim was never judicially determined compensable.

As discussed in the body of this opinion, however, our decision is not based on the timeliness of Decedent's lifetime claim or on the timeliness of Claimant's fatal claim. Rather, our decision is based on the interplay between the C & R and the 300–week onset period for occupational disease claims. Therefore, Claimant asserts distinctions that are immaterial to our rationale.

However, assuming for current purposes only that an ambiguity in Section 301(c)(2) of the Act exists, we resolve it against the prosecution of a fatal claim here. While mindful of the remedial purpose of the Act and the need to liberally construe its provisions, we conclude there are several considerations which preponderate in favor of the result reached by the Second WCJ and the Board. First, we may consider the strong public policy of finality which attaches to use of the C & R procedure. *Dep't of Labor & Indus., Bureau of Workers' Comp. v. Workers' Comp. Appeal Bd. (U.S. Food Serv.); Barszczewski v. Workers' Comp. Appeal Bd. (Pathmark Stores, Inc.),* 860 A.2d 224 (Pa.Cmwlth.2004). Second, the result is consistent with our Supreme Court's footnote *dicta* in *Miletti.* Third, rules of statutory construction favor the result. *See* 1 Pa.C.S. § 1921(c)(6) (when words of a statute are not explicit, the consequences of a particular interpretation may be considered). Thus, we may seek to avoid the absurd result of the resurrection of an extinguished right by a third party whose claim depends on the released right but whose claim did not arise until after the right was extinguished. *See* 1 Pa.C.S. § 1922(1) (presumption that the General Assembly does not intend a result that is absurd or unreasonable).

For the above reasons, we affirm the Board's orders.

### ORDER

AND NOW, this 12th day of December, 2007, the orders of the Workers' Compensation Appeal Board are **AFFIRMED.**