J-A18017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| DU PHUNG AND THUR PHUNG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| THE CUTLER GROUP, INC. T/D/B/A | : | No. 621 EDA 2017 |
| DAVID CUTLER GROUP | : | |

Appeal from the Order Entered January 13, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s): 06-27292

BEFORE:   STABILE, J., STEVENS*, P.J.E., and STRASSBURGER**, J.

MEMORANDUM BY STEVENS, P.J.E.:                **FILED AUGUST 29, 2018**

Appellants, Du Phung and Thur Phung, appeal from the January 13, 2017, order entered in the Court of Common Pleas of Montgomery County granting summary judgment in favor of Appellee, the Cutler Group, Inc., t/d/b/a David Cutler Group, and dismissing Appellants' complaint in its entirety with prejudice.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: On October 30, 2006, Appellants filed a complaint averring that, on September 24, 2000, they signed an agreement of sale with Appellee for the construction of their house. On July 26, 2001, they made settlement on the house, which was constructed by Appellee, and the parties executed a home warranty agreement.  As

_____
* Former Justice specially assigned to the Superior Court.
** Retired Senior Judge assigned to the Superior Court.

constructed, the front of the house is clad with brick veneer, while the side and rear elevations are clad with stucco.

Appellants alleged that, on April 1, 2006, they discovered water penetrating the interior of their home through the exterior stucco, resulting in water damage and fungal contamination of the exterior and interior of the house, as well as its contents. Appellants alleged they provided Appellee with notice and a reasonable period to make repairs to the new house, as well as correct the defects, to no avail. Appellants indicated they will incur costs in excess of $100,000.00 to make the repairs. The complaint contained claims of negligence, strict liability, breach of contract, breach of express warranty, breach of statutory and implied warranties, inconvenience/annoyance/discomfort, and consumer fraud.

Appellee filed preliminary objections on November 14, 2006, to which Appellants filed a response on December 4, 2006. However, the trial court did not rule upon the preliminary objections.[1]

The docket reveals that, on June 19, 2009, the trial court issued a notice to terminate the matter, and on July 2, 2009, Appellants filed a statement of intent to proceed. On October 26, 2011, the trial court issued another notice to terminate, to which Appellants filed a statement of intent to proceed on

_____

[1] Relevantly, the trial court explained that "[a]t the time, the local rule required the filing of an argument praecipe by the plaintiffs' counsel, which was not done." Trial Court Opinion, filed 4/11/18, at 2 n.1.

- 2 -

November 15, 2011. On December 12, 2013, the trial court again issued a notice to terminate, and on December 13, 2013, Appellants filed a statement of intent to proceed.

Following a discovery management conference in April of 2014, and the parties' filing of a trial praecipe on October 23, 2015, the trial court placed the case on a standby trial list.

Thereafter, on January 28, 2016, Appellee filed a motion *in limine* seeking to preclude Appellants' experts from testifying at trial. Specifically, Appellee averred Appellants' expert, Jerry Yedinak of Jerry Yedinak Stucco Inspection & Design, did not offer in his report an opinion with the required reasonable degree of professional certainty that a defect in the application of the stucco caused moisture to breach the water resistant nature of the building envelope and/or caused damage to the substrate.

In this regard, Appellee noted that, in his report, Mr. Yedinak indicated that, on August 21, 2006, he inspected the exterior of the home and performed an analysis of the moisture content of the substrate by drilling holes through the exterior stucco cladding. Appellee averred Mr. Yedinak reported an elevated probe reading under the corner of a single window on the left elevation proximate to a rear window and indicated the elevated reading could have been caused by a number of things, including "improper, or the lack of, flashing around windows, as well as possible leaking windows." Appellee's Motion *In Limine*, filed 1/28/16, at 3 (emphasis omitted). Appellee noted that

Mr. Yedinak's report speculated as to the cause for the elevated moisture reading. *Id.* Appellee noted Mr. Yedinak did not inspect the interior of the house.

Further, in the motion *in limine*, Appellee sought to preclude the expert testimony of Marc Conti of Property Damage Services. Appellee argued Mr. Conti, who failed to issue a formal report and relied upon a "price list," failed to "calculate the cost of the repairs that Mr. Yedinak opined were necessary to remedy the defect[,]" and utilized "the wrong measure of damages[.]" *Id.* at 4-5.

Appellants filed a response in opposition to Appellee's motion *in limine*, and on April 13, 2016, Appellants sought a continuance based on the unavailability of Mr. Yedinak, who was housebound in relation to double hip replacement surgery. Appellants informed the trial court that they would "'immediately make arrangements for [Mr. Yedinak's] videotaped trial deposition, so as to prevent any further delay.'" Trial Court Opinion, filed 4/11/18, at 5 (citation to record omitted). The trial court granted the request for a continuance and scheduled argument on the motion *in limine* for May 4, 2016. However, "Appellants never obtained Mr. Yedinak's videotaped trial deposition." *Id.*

On May 20, 2016, Appellants requested the matter be stricken from the upcoming trial list. Appellants averred that Mr. Conti, their proposed damages expert, had passed away in the week prior and they needed time to obtain a

substitute damages expert. On May 25, 2016, the trial court granted Appellants' request and directed the case be placed back into the civil trial inventory for November 2016.

Following a telephone conference, as well as the grant of another request for continuance made by Appellants, the trial court scheduled argument on all pre-trial motions for January 10, 2017, with trial to commence on January 17, 2017. Appellants filed a pre-trial statement on January 4, 2017, listing four trial witnesses: themselves (Mr. and Mrs. Phung), Tim Brennan, and Mr. Yedinak. On that same day, Appellee filed two motions *in limine*.

In one motion, presenting similar arguments as presented in Appellee's January 28, 2016, motion, Appellee sought the preclusion of Mr. Yedinak's expert testimony on the basis his opinions lacked the requisite degree of professional certainty.

In the other motion, Appellee sought to preclude the expert testimony of Appellants' "new" damages expert, Mr. Brennan. Specifically, Appellee argued that, in his report and estimate, Mr. Brennan utilized the wrong measure of damages. Appellee averred Mr. Brennan's report did not contain an estimate to repair the exterior defects outlined by Mr. Yedinak, and Mr. Yedinak did not inspect the interior of the home, yet Mr. Brennan concluded there is a defect that caused "interior damage identified on the first and second floors from water infiltration." Appellee's Motion *In Limine*, filed 1/4/17, at 2.

Appellee noted that Mr. Brennan first inspected the home fifteen years after it was built and ten years after Mr. Yedinak conducted his testing. Further, Appellee noted that Mr. Brennan's opinion "merely parrots the findings in the estimate and report" prepared by other experts. *Id.* at 3. Mr. Brennan's report, dated July 25, 2016, provided in its entirety as follows (verbatim):

> Dear Mr. Wheeler:
>
> At your request, I inspected the Phung Residence for damage on June 11, 2016 at 1:30 PM. Prior to visiting the property, I was provided with the stucco report prepared by Jerry Yedinak, of Yedinak Stucco Inspection & Design, as well as the report and estimate prepared by the late Mark Conti. Each of the reports detailed issues with the exterior stucco installation.
>
> My inspection identified all of the issues that Mr. Yedinak and Mr. Conti pointed out in their respective reports. There was interior damage identified on the first and second floors from water infiltration. The basement exit stairs area experienced minor damage from water infiltration. There is also exterior damages resulting in the stucco not being installed to proper standards, as outlined in the Yedinak and Conti reports.
>
> I measured the interior rooms with damage and estimated the repairs in each. I entered the information into Xactimate, an estimating software program used by contractors and insurance companies to estimate construction repair costs. The program is generally accepted in the construction and insurance industries as an effective estimating tool to arrive at reasonable repair costs.
>
> Attached is a copy of my estimate. There are interior and exterior sections with itemized construction repair costs related to each. I have determined the damages and necessary repairs based upon my 17 years as a residential contractor, 10 years as a construction Specialist Estimator and the reports by Jerry Yedinak and Mark Conti. I feel the accompanying estimate provides an accurate assessment of the costs involved in repairing the damages to the Phung Residence caused by the improperly installed stucco exterior.
>
> Please contact me if you have any questions.

Appellants' Pre-Trial Statement, Exhibit A.[2]

Appellants filed a response in opposition to Appellee's motion *in limine* to preclude Mr. Brennan's testimony. As it related to Appellee's motion *in limine* to preclude Mr. Yedinak's testimony:

> Appellants' counsel sent an email to the court and opposing counsel stating in part as follows: "Please be advised that Plaintiffs will not be filing a response to Defendant's Motion in Limine to Preclude the testimony of Jerry Yedinak inasmuch as Plaintiffs will not be calling Mr. Yedinak to testify at trial (he is severely ill and housebound, indefinitely)."

Trial Court Opinion, filed 4/11/18, at 8 (citation to record omitted).

On January 10, 2017, the trial court held argument on the matter. Appellee urged the trial court to preclude Mr. Brennan's trial testimony on various grounds, including: Mr. Brennan first inspected Appellants' home fifteen years after it was built and ten years after Mr. Yedinak conducted testing; Mr. Brennan conducted no additional testing and provided no photographs or other evidence regarding alleged damage to the interior of the home; Mr. Brennan's report failed to meet the requirements of Pa.R.E. 702 since he failed to set forth the alleged specific defect in the construction; and Mr. Brennan merely parroted "what he believes to be Conti's and Yedinak's conclusions which are a misstatement of their reports." N.T., 1/10/17, at 5. Appellee argued that "absent testimony from Mr. Yedinak, [Appellants] can't

---

[2] Mr. Brennan attached a fourteen-page estimate for damages to this report, as well as a copy of his curriculum vitae.

prove liability, and absent the opinion of Mr. Brennan, [Appellants] cannot maintain any of the causes of action alleged." *Id.* at 6.

In response, Appellants argued Mr. Brennan was permitted to rely upon the expert report of Mr. Yedinak, who indicated that the "condition of the stucco [was] inadequate," as well as the report of the deceased Mr. Conti, "who came to a similar conclusion that there was water intrusion to the interior because of these inadequacies in the stucco cladding on the outside." *Id.* at 7. Appellants argued that since Mr. Brennan is an expert he is permitted to rely on other experts' opinions, even though those experts may not themselves be available to testify. Appellants further argued that, based upon the information from other experts, Mr. Brennan properly "prepared an estimate of what he thought it should cost to repair not only the exterior damage. . .but also the interior damage[.]" *Id.*

Appellee responded that, even if Mr. Brennan was permitted to rely on other experts' opinions, Mr. Yedinak never examined the interior of the house to determine if there was water damage. *Id.* at 8. Further, neither Mr. Yedinak nor Mr. Conti set forth the specific defect in the house. *Id.* at 8-9.

The trial court indicated it would soon rule on the motions *in limine*, and in the meantime, on January 11, 2017, Appellee filed a motion for summary judgment, along with a supporting memorandum. Therein, Appellee argued that, in order to maintain a cause of action against Appellee under any of the theories of liability presented in the complaint, Appellants' "expert must

identify the defect in the house as constructed by [Appellee]." Appellee's Motion for Summary Judgment, filed 1/11/17, at 5. Appellee noted that Appellants identified Mr. Yedinak as their sole liability expert; however, Appellants failed to take Mr. Yedinak's videotaped deposition and later indicated he would not be testifying at trial. Thus, Appellee averred "[a]bsent Mr. Yedinak's testimony on the issue of liability and causation [Appellants] cannot maintain a right to claim against [Appellee] under any theory of liability." *Id.* at 3.

Moreover, Appellee averred that, even assuming the existence of a defect, Appellants needed to prove a "vitally important link of causation." *Id.* at 5 (citation omitted). Appellee noted "Mr. Yedinak admitted in his report, in the absence of further testing, other possible causes of the elevated probe readings could not be ruled out." *Id.* at 6.

As it related to Mr. Brennan, Appellee posited Mr. Brennan should be precluded from relying upon Mr. Yedinak's and Mr. Conti's reports and, additionally, since Mr. Brennan conducted no additional testing to confirm the existence of a defect and/or eliminate other possible causes of the alleged defect, he had no basis to render an opinion on the issue of liability. *Id.* Appellee argued:

> [T]there is no defect evidence, circumstantial or otherwise, to support an opinion on the issue of liability. Without saying who or how, Mr. Brennan simply concludes that he identified all of the issues that Mr. Yedinak and Mr. Conti identified in their reports. Mr. Brennan's circular reasoning rests on no factual foundation and is insufficient to support expert analysis.

- 9 -

*Id.* Accordingly, Appellee posited it was entitled to the entry of summary judgment as a matter of law.

On January 13, 2017, Appellants filed an answer in opposition to Appellee's motion for summary judgment, along with a supporting memorandum. Therein, Appellants argued they produced sufficient expert testimony on the issues of liability, causation, and damages so as to present the issue to a fact-finder. Appellants indicated that Mr. Brennan would testify as to liability, causation, and damages, and as an expert, he is permitted to rely on the expert reports of Mr. Yedinak and Mr. Conti. Appellants admitted that Mr. Yedinak did not inspect the interior of the home; however, Appellants posited "he identified multiple defects in the construction of the home as set forth in his report." Appellants' Answer to Motion for Summary Judgment, filed 1/13/17, at 5. Appellants concluded "the report of [Mr.] Brennan, which incorporates the opinions of [Mr.] Yedinak and [Mr.] Conti, meets the requisite burden of proof." *Id.* at 6.

By order entered on January 13, 2017, the trial court granted Appellee's motion for summary judgment and dismissed Appellants' complaint in its entirety with prejudice. Appellants filed a motion for reconsideration, which the trial court denied. This timely appeal followed on February 8, 2017. The trial court directed Appellants to file a Pa.R.A.P. 1925(b) statement, Appellants timely complied, and the trial court filed a responsive Pa.R.A.P. 1925(a) opinion.

Appellants present the following issue for our review:

Did the trial court commit errors of law and fact and abuse its discretion in precluding Appellants' expert conclusions and granting Appellee's motion for summary judgment?

Appellants' Brief at 4.

Initially, we note that summary judgment is proper:

(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa.R.C.P. 1035.2.

In reviewing the grant or denial of a motion for summary judgment,

[w]e view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered. Our scope of review of a trial court's order granting or denying summary judgment is plenary, and our standard of review is clear: the trial court's order will be reversed only where it is established that the court committed an error of law or abused its discretion.

*Abrams v. Pneumo Abex Corp.*, 602 Pa. 627, 981 A.2d 198, 203 (2009).

*See State Farm Fire & Cas. Co. v. PECO*, 54 A.3d 921, 925 (Pa.Super.

2012) (holding we may disturb the trial court's determination only for an error

of law or abuse of discretion).

In the case *sub judice*, Appellants do not dispute that, to establish a *prima facie* case under any of the theories presented in their complaint, they were required to set forth sufficient evidence from which a fact-finder could conclude Appellee was responsible for a construction defect (i.e., improperly applying the stucco exterior) and this defect was the proximate cause of actual damage to their home. Further, Appellants do not dispute that their issues involve a claim of defect that is not so obvious as to be within the range of experience and comprehension of the ordinary layperson such that expert testimony was required to establish the construction defect, causation, and actual damages. **See Kurian v. Anisman**, 851 A.2d 152, 155 (Pa.Super. 2004).

However, Appellants contend Mr. Brennan's expert report created a genuine issue of material fact as to whether Appellee improperly installed the stucco and whether such caused actual exterior and interior damage to the house. Appellants further specifically contend the trial court erred in ruling Mr. Brennan was not permitted to testify regarding liability and causation since there was no foundation for his own independent opinions.

In this vein, the trial court concluded Mr. Brennan's expert report revealed that, if Mr. Brennan testified at trial, Mr. Brennan would "parrot" the opinions of Mr. Yedinak and Mr. Conti as to the existence of a construction defect and causation. Thus, the trial court held that Mr. Brennan was

precluded from testifying as to these issues and, absent further evidence on the issues, the trial court granted summary judgment in favor of Appellee.

We agree with the trial court that Mr. Brennan's report reveals that he was acting as a mere conduit or transmitter of Mr. Yedinak's and Mr. Conti's opinions (extrajudicial sources). *See Woodard v. Chatterjee*, 827 A.2d 433 (Pa.Super. 2003). Thus, the trial court properly ruled Mr. Brennan was precluded from testifying as to the existence of a defect and causation.

The law provides that:

> expert testimony is incompetent if it lacks an adequate basis in fact. While an expert's opinion need not be based on absolute certainty, an opinion based on mere possibilities is not competent evidence. This means that expert testimony cannot be based solely upon conjecture or surmise. Rather, an expert's assumptions must be based upon such facts as the jury would be warranted in finding from the evidence. Accordingly, the Pennsylvania Rules of Evidence prescribe a threshold for admission of expert testimony dependent upon the extent to which the expert's opinion is based on facts and data.

*Gillingham v. Consol Energy, Inc.*, 51 A.3d 841, 849 (Pa.Super. 2012) (citation omitted). Thus, an adequate basis in fact must enable the expert to opine with a reasonable degree of certainty and is incompetent if it lacks an adequate basis. *See id.*

With regard to the bases of opinion testimony by experts, Pa.R.E. 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

Pa.R.E. 703.

Accordingly, "[w]hen the expert witness has consulted numerous sources, and uses that information, together with his own professional knowledge and experience, to arrive at his opinion, that opinion is regarded as evidence in its own right and not as [inadmissible] hearsay in disguise." *Woodard*, 827 A.2d at 444.

However, as the Comment to Pa.R.E. 703 provides:

An expert witness cannot be a mere conduit for the opinion of another. An expert witness may not relate the opinion of a non-testifying expert unless the witness has reasonably relied upon it in forming the witness's own opinion.

Pa.R.E. 703, Comment.

In interpreting the Comment to Pa.R.E. 703, this Court has held:

[A]n expert may not act as a "mere conduit or transmitter of the content of an extrajudicial source."

An "expert" should not be permitted simply to repeat another's opinion or data without bringing to bear on it his own expertise and judgment. Obviously, in such a situation, the non-testifying expert is not on the witness stand and truly is unavailable for cross-examination. The applicability of the rule permitting experts to express opinions relying on extrajudicial data depends on the circumstances of the particular case and demands the exercise, like the admission of all expert testimony, of the sound discretion of the trial court. Where ... the expert uses several sources to arrive at his or her opinion, and has noted the reasonable and ordinary reliance on similar sources by experts in the field, and has coupled this reliance with personal observation, knowledge and experience, we conclude that the expert's testimony should be permitted.

*Woodard*, 827 A.2d at 444-45 (quotations omitted).

- 14 -

In ruling Mr. Brennan was precluded from offering an opinion as to the existence of a construction defect and causation, the trial court relevantly indicated the following:

> Appellants surprised Appellee at oral argument one week before trial, eight (8) months after stating an intention to obtain Mr. Yedinak's trial deposition, and ten (10) years after filing their complaint. Although Appellants may have sent Mr. Brennan's damage report to Appellee in July of 2016, they did not notify Appellee of their intention to rely on his report alone for both liability and damages until January 10, 2017. While the court was inclined to deny Appellee's motion *in limine* to preclude Mr. Brennan as a damages expert, in part, for the reasons stated in Appellants' response thereto, neither Mr. Brennan nor his report were [*sic*] proffered to provide an opinion on liability until the day of oral argument. The [trial court] determined that Mr. Brennan had not offered his own independent analysis and opinion regarding liability [and causation] in his July 25, 2016, report. Rather, in his report, Mr. Brennan parroted the conclusions reached by Mr. Yedinak without providing any analysis on liability, much less his own. In short, Mr. Brennan relied on Mr. Yedinak's report to prepare a damages report. Hence, without the testimony of Mr. Yedinak, Appellants lacked a liability expert, and specifically, an opinion and report demonstrating proximate cause. Without an opinion on liability, Appellants could not meet their burden of proof and make out a *prima facie* case sufficient to go to the jury.

Trial Court Opinion, filed 4/11/18, at 19-21.

We conclude the trial court properly ruled that Mr. Brennan's report lacked a foundational basis as it relates to the existence of a construction defect and causation. As the trial court aptly noted, Mr. Brennan was initially retained, and prepared his report, for the purposes of valuing damages. From his report, it is clear that he started with the assumption there existed a

construction defect in the stucco, which was the proximate cause of damages, and it was his role to affix an amount for damage.

In this regard, Mr. Brennan noted that he reviewed Mr. Yedinak's and Mr. Conti's reports, and "[e]ach of the reports detailed issues with the exterior stucco installation[,]" and "[t]here is also [] exterior damages resulting in the stucco not being installed to proper standards, as outlined in the Yedinak and Conti reports." Appellants' Pre-Trial Statement, Exhibit A. He then summarily states "[m]y inspection identified all of the issues that Mr. Yedinak and Mr. Conti pointed out in their respective reports." *Id.* However, Mr. Brennan does not discuss the "issues." He did not identify any opinion made by Mr. Yedinak or Mr. Conti as to a specific defect or proximate causation, and in fact, he did not offer his own opinion as to these matters. Rather, relying on Mr. Yedinak's and Mr. Conti's reports, Mr. Brennan identifies items that suffered water damage and then assesses damages with regard thereto. Therefore, we conclude the trial court properly ruled that Mr. Brennan was not permitted to testify as to liability and causation;[3] consequently, absent additional proffered expert testimony, the trial court properly entered summary judgment in favor of Appellee.

---

[3] In its opinion, the trial court touches upon the fact Appellee argued that, assuming, *arguendo*, Mr. Brennan was permitted to utilize Mr. Yedinak's and Mr. Conti's reports, their reports were themselves speculative as to the existence of a specific construction defect and causation. However, in light of our discussion *supra*, we find it unnecessary to address this issue.

Finally, we note Appellants argue they had insufficient time to respond to Appellee's motion for summary judgment. Specifically, they argue Appellee moved for summary judgment on January 11, 2017, and the trial court instructed Appellants to respond by 9:30 a.m. on January 13, 2017. Appellants aver that, as a result of the shortened reply period, they were not given "a full and fair opportunity to supplement the record and oppose the motion." Appellants' Brief at 15.

Pa.R.Civ.P. 1035.3 provides, in relevant part:

> (a) Except as provided in subdivision (e), the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion[.]
>
> ***
>
> (e)(1) Nothing in this rule is intended to prohibit a court, at any time prior to trial, from ruling upon a motion for summary judgment without written responses or briefs if no party is prejudiced. A party is prejudiced if he or she is not given a full and fair opportunity to supplement the record and to oppose the motion.

Pa.R.C.P. 1035.3.

With regard to Rule 1035.3, this Court has recognized:

> Despite the absence of an express notice provision, we have held that a trial court must afford parties a full and fair opportunity to argue against a motion for summary judgment. Where, however, neither party is prejudiced, a trial court may grant summary judgment without providing opposing parties an opportunity to argue or file responsive briefs. . .[W]e [have] upheld an entry of summary judgment without any opportunity to argue or file response briefs upon finding that "there was an extensive record before the trial court and it was aware of the legal positions of the parties."

- 17 -

***Smitley v. Holiday Rambler Corp.***, 707 A.2d 520, 526 (Pa.Super. 1998)

(citations and quotations omitted).

Here, as Appellants admit, although the trial court shortened the time, the trial court did not rule on Appellee's motion for summary judgment without expressly giving Appellants an opportunity to file a reply. Further, as the trial court relevantly indicated:

> [H]aving learned of Appellants' intention to proceed with Mr. Brennan as both their liability and damages expert for the first time at oral argument on January 10, 2017, [c]ounsel for Appellee asserted during her argument that Appellants could not prove liability without Mr. Yedinak's opinion and testimony. Counsel for Appellants had the opportunity to respond. At the pre-trial conference immediately following oral argument on the motions, [c]ounsel for Appellee made an oral motion for summary judgment based on her argument that Appellants could not establish liability[.] Counsel for Appellants had the opportunity to respond. Trial had been scheduled to begin in January of 2017 for weeks, after having previously been removed from the trial ready list twice and continued at least twice. The court directed [c]ounsel to file a written motion, which Appellee did the next day. Appellants responded two days later. Counsel for Appellants had notice and the opportunity to respond at oral argument, at the pre-trial conference, and in writing. Consequently, Appellants had notice as well as the opportunity to respond. The [trial court] did not decide the motion under Pa.R.Civ.P. 1035.3(e)(1) given that the court directed Appellants to file a written response. Appellants did so on Friday, January 13, 2017.

Trial Court Opinion, filed 4/11/18, at 21-22.

We find no abuse of discretion and conclude Appellants are not entitled to relief. ***See Smitley***, ***supra***.

For all of the foregoing reasons, we affirm.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/18